<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DENISHA COLEMAN, | : | |
| | : | Civil Action No. 13-4772 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, et al., | : | |
| | : | August 6, 2014 |
| Defendants. | : | |

**WIGENTON**, District Judge

Before this Court is Plaintiff Denisha Coleman's ("Plaintiff") appeal on the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Barbara Dunn's ("ALJ Dunn") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI, respectively, of the Social Security Act (the "Act"). Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks review of a determination of the Commissioner, which denied Plaintiff's applications for DIB and SSI under the Act.

This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth herein, this Court **AFFIRMS** the decision of ALJ Dunn.

**BACKGROUND AND PROCEDURAL HISTORY**

On September 21, 2010, Plaintiff filed an application for SSI alleging a disability causally related to injuries suffered in a car accident on May 31, 2009. (R. 66; Pl.'s B. at 1-2.) The claim was initially denied on December 17, 2010, and denied again upon reconsideration on April 11, 2011. (R. 14.) Following Plaintiff's written request, a hearing was held on May 21, 2012. Subsequently, ALJ Dunn returned an unfavorable decision holding that Plaintiff was not disabled. (R. 14.) The Commissioner denied Plaintiff's request for review of the ALJ's decision dated June 20, 2012 ("ALJ's Decision"). (R. 1, 8.) On August 12, 2013, the current appeal was timely filed.

*Education and Work History*

Plaintiff was born on March 26, 1978 and is currently 36 years old. (R. 296.) Plaintiff did not graduate high school but has her GED. (R. 134.) Plaintiff testified she worked as a child-care provider in 2007 and prior to that as a secretary and housekeeper. (R. 30.) Plaintiff alleges that she has been unable to work in any capacity since August 1, 2009, as a result of functional limitations from a motor vehicle accident on May 31, 2009. (R. 14, 341-44; Pl.'s B. at 2.) At the time of her initial SSI application, September 21, 2010, Plaintiff did not work. (R. 119, 126.) *Medical History*

Prior to the May 31, 2009 car accident, Plaintiff's medical history did not include any medical disorders or prior traumata of significance.[1] (R. 200.) On May 31, 2009, as Plaintiff attempted to exit a taxicab, the cab pulled away causing her to fall to the ground. (R. 179.) Plaintiff was taken to the University Hospital for examination. (R. 58.) Plaintiff had pain in her

---

[1] However, Plaintiff was considered medically obese with a height of 5'9 and a weight close to 200 pounds during the relevant time period. (R. 118, 327.)

shoulders and back; however, the x-rays showed no fractures. (R. 179.) Plaintiff was released that same day. (R. 58.)

On June 6, 2009, Plaintiff began treatment at the Essex Valley Spine Care Center under the care of Dr. Victor Verlezza. D.C. ("Dr. Verlezza"). (R. 212, 214.) At an initial consultation at Essex Valley Spine Care, Plaintiff complained of pain in her arms, legs, back, and shoulders.[2] (R. 209.) MRIs of Plaintiff's spine taken approximately four months after the accident indicated bulging annuli at C3-C4, L2-L3, L4-L5, and L5-S1; left positive L4-L5 radiculopathy; and loss of cervical lordosis. (R. 211, 215-16.) Treating notes indicate that these injuries were causally related to the motor vehicle accident on May 31, 2009. (R. 211.) From June 6, 2009, through March 18, 2010, Plaintiff underwent therapy at Essex Valley Spine Care's facilities, at which point Dr. Verlezza opined that Plaintiff had received the maximum benefit from treatment and was discharged. (R. 211-13.) At Essex Valley, Plaintiff underwent a range of motion study of the cervical and lumbar spine. (R. 212-13.) Restrictions on her range of motion were detected in both the cervical and lumbar spine regions. (R. 212-13.) Plaintiff expressed that these impairments caused discomfort when she attempted housecleaning, putting on socks and shoes, and lifting her arms above her head to comb her hair. (R. 213.) Plaintiff also expressed discomfort when standing, sitting, exercising, or engaging in sexual activity. (R. 213.) Dr. Verlezza concluded that Plaintiff's range of motion restrictions would continue post-treatment because Plaintiff suffered a permanent injury of the neuromusculoskeletal system. (R. 212-14.)

Dr. Verlezza referred Plaintiff to Dr. Norman Heyman ("Dr. Heyman"), an orthopedic specialist, Dr. Gautam Sehgal, a neurologist ("Dr. Sehgal), and Dr. Evangelos Megariotis ("Dr.

---

[2] Plaintiff complained of the following: constant and severe neck pain; radiation of pain to right arm; painful right shoulder; painful elbows; painful wrists; difficulty raising both arms; low back pain; difficulty bending; difficulty walking; radiation of pain to right and left legs; pain and numbness right and left legs; knee pain; left ankle pain; radiation of pain to right and left gluteal region; and radiation of pain to right and left upper arms. (R. 209.)

3

Megariotis") for further evaluation of her condition. (R. 211.)  On October 29, 2009, Dr. Heyman examined Plaintiff and noted that she had difficulty walking on her heels and toes because of injuries to the left ankle and right knee and mild decrease in end range motion with respect to Plaintiff's back and neck. (R. 179, 180.) Dr. Heyman diagnosed Plaintiff with cervical and lumbosacral sprains with internal derangement and contusions in the right knee and left ankle. (R. 181.)  As a result, Dr. Heyman advised Plaintiff to begin physical therapy and seek additional testing. (R. 181.)

Under the direction of Dr. Sehgal, on February 5, 2010, Plaintiff underwent nerve conduction velocity studies and electromyography tests. (R. 185, 187-88.)  The tests revealed evidence of left L4-L5 radiculopathy and Dr. Sehgal advised Plaintiff to continue chiropractic care and seek medical evaluation for pain management if needed. (R. 187-88.)

Between December 12, 2009 and May 5, 2010, Plaintiff visited Dr. Megariotis five times. (R. 194.) Dr. Megariotis initially diagnosed Plaintiff with the following: left ankle internal derangement with tendonitis; right knee sprain/strain; severe acute traumatic cervicothoracic sprain/strain; traumatic C3-C4 disc bulge; severe acute traumatic lumbosacral sprain/strain; and traumatic discopathy in lumbar spine. (R. 197.)  On May 12, 2010, at Dr. Megariotis's reevaluation examination, Plaintiff complained of persistent pain in her neck, shoulders, back, knees, and left ankle and that pain was made worse by physical activity, but partially relieved by pain medication. (R. 199.)  Dr. Megariotis advised Plaintiff that she would be unable to work until May 31, 2010, but that after that date, Plaintiff could attempt to return to work. (R. 200-01.) On October 18, 2010, Dr. Megariotis submitted a general medical report dated October 8, 2010 to enable a reviewing physician to independently determine the duration and severity of Plaintiff's impairments. (R. 194.)  Dr. Megariotis opined that Plaintiff was limited in work

4

related activities and could only lift and carry items below twenty pounds, stand for less than two hours per work day, sit for less than six hours per work day, and could not engage in work requiring pushing or pulling. (R. 194-95.)

Plaintiff also received treatment from Dr. Robert Clarke ("Dr. Clarke") and Dr. Akin Gbayisomore ("Dr. Gbayisomore") for pain management. (R. 54, 142.) From September 25, 2009 through May 22, 2012 Dr. Clarke treated Plaintiff and diagnosed her with chronic radiculopathy and occasional depression. (R. 265, 268.) Dr. Clarke prescribed Plaintiff the drug Percocet, which controlled her chronic back pain.[3] (*See e.g.*, R. 236-37, 241, 244-45, 252-53.) Upon referral from Dr. Clarke, Dr. Gbayisomore assessed Plaintiff's condition on February 3, 2010. (R. 190, 193.) Dr. Gbayisomore found that Plaintiff suffered from chronic nausea and ankle, lower back, shoulder, and neck pain and recommended continual use of Percocet. (R. 193.)

On May 22, 2012, Dr. Clarke completed a Physical Residual Function Capacity Questionnaire for the record. (R. 340.)[4] Dr. Clarke indicated that Plaintiff's symptoms included chronic back pain, neck pain radiating down the back, bilateral knee pain, left ankle pain, and numbness in the hands. (R. 341.) Dr. Clarke determined that Plaintiff could sit or stand/walk less than two hours per day and was likely to miss more than four days of work per month due to her impairments. (R. 342-44.) Dr. Clarke noted that Plaintiff's physiological conditions of depression and sleep apnea contributed to the severity of Plaintiff's symptoms. (R. 342.) From these findings, Dr. Clarke concluded that Plaintiff would be incapable of even 'low stress' jobs because "[patient] states that her pain becomes unbearable." (R. 342.)

---

[3] Due to Plaintiff's insurance policy, this prescription was later changed to Oxycodone on August 11, 2011. (R. 305, 312-313). Treatment notes describe chronic back pain as stable. (R. 245, 253, 259.)
[4] This submission was part of the record for the ALJ hearing, but was not available to either independent non-treating medical consultant. (R. 340.)

Plaintiff has moderate difficulties in social functioning, and stated that she prefers to be alone at home due to her pain and discomfort. (R. 17, 164.)  Additionally, Plaintiff believes this pain has caused her depression. (R. 172.)  She no longer participates in activities she once enjoyed like attending parties, skating, and visiting the mall.  (R. 166, 172.)  However, Plaintiff noted that she visits with her cousin and occasionally ventures to the store near her home.  (R. 50-51, 164-65.)

Plaintiff also has moderate difficulties in concentration and focus, although she has not sought mental health treatment. (R. 17, 46.)  At the ALJ hearing on May 21, 2012, Plaintiff testified that she has difficulty focusing on tasks because her mind wanders after a few minutes. (R. 45-46.) She characterized herself as having a "short attention-span [sic]" which causes her difficulty in completing tasks. (R. 46, 173.)

*Non-Treating Medical Opinions*

On December 6, 2010, Dr. Norman H. Schachtel, the State agency physician, reviewed Plaintiff's medical record to determine her RFC.  (R. 232.)  Dr. Schachtel found that Plaintiff had several external and postural limitations, which prevented Plaintiff from standing or walking for greater than two (2) hours per 8-hour workday.  (R. 226.)  Dr. Schachtel determined that Plaintiff's ability to sit was limited to sitting for six hours per eight hour day, climb stairs, stoop, kneel, crouch, crawl, and lift or carry objects greater than 10 pounds was impaired. (R. 226-27.) On April 8, 2011, as part of the claim review process, Dr. Harvey Yeager ("Dr. Yeager") reviewed Dr. Schachtel's medical determination and affirmed the findings. (R. 292.) While the Plaintiff indicated that she had additional pain upon her appeal, Dr. Yeager noted that no additional medical evidence relating to these claims was submitted. (R. 292.)

*ALJ Hearing and Opinion*

At the May 21, 2012 hearing, ALJ Dunn heard testimony from both Plaintiff and Jackie Wilson, an independent vocation expert. (R. 28.)  Plaintiff testified that she suffers daily from "sharp pain" that starts in her neck and radiates down her shoulders and back and lasts for several hours. (R. 36-38.) Further, Plaintiff testified that lying down helps to relieve the pain and pain medication helps to "slow[]" it.  (R. 36-37.) Plaintiff testified that when standing for greater than 45 minutes her knees throb and swell, making it difficult to climb stairs, bend over, or kneel down. (R. 37, 42-43.)   Plaintiff dresses, bathes, and feeds herself, but does not assist in household chores.  (R. 46-49.)

The vocational expert, Jackie Wilson ("Wilson"), testified that under the following assumptions Plaintiff would be unable to do her prior work as a child monitor: Plaintiff can lift frequently or occasionally up to ten pounds; stand or walk four hours per workday; sit six hours per workday; occasionally climb stairs; never climb ladders; frequently balance; and occasionally stoop, kneel, crouch, or crawl. (R. 58-59.)   However, under those assumptions, Wilson indicated that an individual with Plaintiff's age, experience, and educational level would be able to do other work. (R. 59.)   Wilson identified three such work examples: document preparer; order clerk, food and beverage; and final assembler. (R. 59-60.)   However, if an additional restriction of a 25% off-task concentration impairment was added, the vocational expert stated in her opinion employment would be precluded. (R. 61.)

On June 20, 2012, ALJ Dunn issued an unfavorable decision finding Plaintiff was not disabled.

**LEGAL STANDARD**

This Court exercises plenary review of all legal issues on an appeal of a decision by the Commissioner of Social Security.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  This Court's

review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give deference to the ALJ's findings if supported by substantial evidence. *Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

In determining claims for disability under the Act, the SSA utilizes a five-step sequential evaluation process. 20 C.F.R. 416.920(a). If at any step, a disability determination is made, the evaluation ends. *Id*.

First, at step one, the ALJ must make a determination as to whether the individual is currently engaged in "substantial gainful activity." 20 C.F.R.416.920(b). If so, the individual is found to be not disabled. Next, at step two, the ALJ must make a determination whether the individual suffers from a "severe impairment," or has a combination of impairments that is "severe." (20 C.F.R. 416.920(c). If the individual does have a severe impairment or a severe combination of impairments, the analysis proceeds to the next step. If not, the individual is not disabled.

At step three, the ALJ compares the individual's impairments of combination of impairments against those impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the severity of the individual's impairments or combination of impairments meets or medically

equals the criteria listed in Part 404, Subpart P, Appendix 1, and meets the duration requirement, then the individual is deemed disabled. If not, the analysis proceeds to the next step.

Following the third step, the ALJ must identify the individual's residual functional capacity ("RFC"). An individual's residual functional is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. The ALJ considers all impairments in this analysis, not just those deemed severe. 20 C.F.R. 416.920(e); 416.945; SSR 96-8p.

At the fourth step, the ALJ determines whether the individual is capable of engaging in her past relevant work. If so, the individual is not disabled. If not, the ALJ then moves to step five. Here, it is the burden of the SSA to prove that the individual is capable of adjusting to other work considering her RFC, age, education, and work experience. If the individual is capable of engaging in other work that exists in significant numbers in the national economy, then the individual is not disabled. If not, then the individual is disabled.

**ALJ Dunn's Decision**

ALJ Dunn considered Plaintiff's record and returned an unfavorable decision. (R. 11, 14.) At step one of the five-step SSI disability analysis, ALJ Dunn concluded Plaintiff was not engaged in substantial gainful activity since the application date for supplemental security income and, therefore, was not precluded from a disabled determination. (20 C.F.R. 416.920(a)(4)(i); R. 16.)

At step two, ALJ Dunn concluded that Plaintiff has the following severe impairments: cervical and lumbar sprain/strain; lumbar radiculopathy; bilateral knee arthralgia; internal derangement of the left knee and left ankle; status post right wrist sprain; obesity; history of opioid dependence; and depression. (R. 16.) These impairments were considered to be severe

because they were "medically determinable impairments that . . . significantly limit the [plaintiff's] mental and physical" abilities to do one or more work activities and occurred over a twelve-month period. (R. 16; 20 C.F.R. 416.909.) While there is reference in the record to Plaintiff possibly suffering from sleep apnea, ALJ Dunn noted there was no medical evidence to establish this impairment limited the Plaintiff's ability to perform basic work activities, and thus, it was not a severe impairment. (R. 16.)

At step three, ALJ Dunn concluded Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16.) ALJ Dunn held that the criteria for major dysfunction of a joint were not demonstrated by the medical evidence in the record. (R. 16.) Specifically, the medical evidence did not establish that Plaintiff had the required degree of difficulty in ambulating or performing fine and gross motor movements as defined in 1.00B2b and 1.00B2c, respectively. (20 C.F.R. Part 404, Subpart P, Appendix 1 1.00B2b-c.) While there is no specific medical listing regarding obesity, ALJ Dunn considered this factor in the general context of Plaintiff's record. (R. 17.)

ALJ Dunn determined Plaintiff's mental impairments were moderate restrictions in her daily living, concentration, and social functioning. ALJ Dunn noted that Plaintiff reported that she does some chores and helps her son, but that her son is self-reliant and she relies on her mother for a great deal of assistance. (R. 17, 162-63.) Plaintiff also testified that she has trouble maintaining focus and completing tasks. (R. 45-46.) Additionally, while Plaintiff testified that she has some degree of difficulty in social interaction, she does socialize with her cousin but prefers to be at home. (R. 17.) ALJ Dunn determined these were moderate restrictions and did not rise to the criteria required in listings 12.04 and 12.09. (20 C.F.R. Part 404, Subpart P,

Appendix 1 12.04, .09.) As Plaintiff's impairments did not meet the criteria required for step three, ALJ Dunn continued the five-step analysis. (20 C.F.R. 416.920(a)(4)(iii).)

Prior to step four, ALJ Dunn was required to make a determination as to the Plaintiff's RFC. (20 C.F.R. 416.920(e).) In determining that Plaintiff has a RFC for limited sedentary work, ALJ Dunn considered Plaintiff's alleged symptoms to the extent they could reasonably be accepted as "consistent with the objective medical evidence" and opinion evidence. (20 C.F.R. 416.927, 929; R. 18.) ALJ Dunn noted Plaintiff complained of neck, back, shoulders, knees, and left ankle pain; and that this pain caused Plaintiff to be unable to stand or walk for more than 45 minutes to an hour or sit for more than one hour. (R. 19.) Plaintiff's physical impairments caused limitations, including exertional limitations. (R. 20, 225-27.) Further, these conditions caused the Plaintiff to suffer from depression. (R. 19.)

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529). Section 404.1529(a) provides that "statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably . . . produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a). This requires the ALJ to weigh the medical evidence to determine whether the claimant's alleged limitations "can reasonably be accepted as consistent with the medical . . . evidence." *Id.*; *see also Hartranft*, 181 F.3d at 362 ("[T]his obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.").

In addition to the objective medical evidence, the ALJ considers other factors in assessing the individual's subjective symptoms, such as: the claimant's daily activities, the type of medication taken to treat the symptoms and its effectiveness, other treatment a claimant has received for relief of symptoms, and other factors concerning limitations and restrictions due to the alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). A claimant's complaints of pain should be given "great weight" only when supported by objective medical evidence, but may be disregarded if contrary medical evidence exists. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993) (citations omitted).

In the instant matter, ALJ Dunn accepted Plaintiff's alleged symptoms as consistent with the objective medical evidence submitted. (R. 19.) However, ALJ Dunn determined the Plaintiff's statements concerning the "intensity, persistence, and limiting effects of these symptoms" were "not credible to the extent they are inconsistent" with the RFC assessment and essentially the objective medical evidence.[5] (R. 19.) ALJ Dunn noted that although Plaintiff alleged disabling impairments, treatment notes in the record do not sustain Plaintiff's claim of a "disabling impairment." (R. 20.) Rather, the record indicates Plaintiff has "good range of motion" and her pain is "largely controlled with pain medication." (R. 20.) Further, ALJ Dunn noted that Plaintiff is able to carry on many daily living activities independently. (R. 20.)

ALJ Dunn found that the record did not support Dr. Clarke's finding that Plaintiff's depression would cause her to miss over four days of work per month. (R. 20.) Dr. Clarke's opinion that Plaintiff was incapable of even low stress jobs was given "no significant weight" because it was contrary to the objective medical evidence and his own treatment notes. (R. 20.)

---

[5] Plaintiff's accident occurred on May 21, 2009, but Plaintiff's application date is and the relevant period begins on September 21, 2010.

While ALJ Dunn found that Plaintiff is impaired, she also concluded that Dr. Clarke's restrictive assessment of disability was determined to be unsupported by medical evidence. (R. 20.)

ALJ Dunn credited Dr. Schachtel's report that Plaintiff, while functionally impaired, was capable of work activity that fell in line with Plaintiff's impairments. (R. 20.) Further, ALJ Dunn noted that Plaintiff's symptoms included pain which was documented to be "largely controlled with pain medication." (R. 20.) Moreover, ALJ Dunn determined the Plaintiff's mental impairments did not preclude all work activity, but still included these moderate impairments in Plaintiff's residual functional capacity. (R. 20.)

At step four, ALJ Dunn concluded that due to the Plaintiff's RFC, she was unable to perform her previous work as a babysitter, which was characterized by a vocational expert as "medium and semi-skilled." (R. 19-21.) She also relied on the items discussed above and the vocational expert's testimony in making this determination. (R. 21.)

At step five, ALJ Dunn considered whether Plaintiff was capable of adjusting to other work considering her RFC, age, education, and work experience. As ALJ Dunn noted, if Plaintiff "had the residual capacity to perform the full range of sedentary work, a finding of 'not disabled' would have been directed by Medical-Vocational Rule 201.28." (R. 21.) However, due to Plaintiff's additional limitations, ALJ Dunn heard testimony from a vocational expert to determine the extent to which these additional limitations would impact the occupational base analysis.

The vocational expert testified that there still were jobs that existed in the national economy in significant numbers that Plaintiff would be able to perform. ALJ Dunn, after review of the record and hearing the testimony of the vocational expert, concluded that, considering Plaintiff's age, education level, work experience, and residual functional capacity, Plaintiff "is

capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (20 C.F.R. 416.920(a)(4)(v); R. 21-22.) Based on this review, ALJ Dunn correctly concluded that Plaintiff is capable of performing other work that exists in significant numbers in the national economy and a finding of "not disabled" is therefore appropriate. As such, this Court finds that substantial evidence supports the ALJ's Decision.

**CONCLUSION**

   For the reasons set forth above, this Court **AFFIRMS** the decision of ALJ Dunn.

                    <u>s/Susan D. Wigenton, U.S.D.J.</u>

cc:  Parties
   Clerk